Olson v. Hunter's Point Homes Dentalman, Forshee, Blakely, and Lucek Ready? Council, whenever you're ready, you may proceed. Thank you, Your Honor. May it please the Court, Council. My name is Thomas Madden. I represent the plaintiffs in these, I believe it's six cases that are consolidated for oral argument. Olson being the one cited by the court. What we have here today is six essentially identical cases. There's some minor factual differences between the two, or between the six of them. What it boils down to is the defendant's Hunter's Point Homes and its related personnel sold to the plaintiffs in each of these cases a series of homes in what's known as the Hunter's Point subdivision in Granite City, Illinois. All of these homes at issue have one common defect. The common defect being behind all of these homes is a power line. Underneath the power line, of course, is an easement or right-of-way for this power line to exist on this property. Of course, you can't build a power line without owning some property rights included there. And included on the lots where these houses are built is this easement, or this right-of-way. Some of these houses are physically built on this right-of-way. While the houses themselves are not physically built on the right-of-way, it's impossible to put onto the house such things as the defendants told the plaintiffs they could put there, such as a back deck or a garage or shed or other similar items that could exist legally and are commonly done in the Metro East area. For instance, at least one of these homes literally has a sliding glass second-story door that you step out and you drop 7, 8, 9 feet because it is impossible to put the deck that's supposed to be built there because this easement prohibits construction of any permanent structures on the easement. Thus, it is absolutely false any representation made that anything could be built on the entirety of this lot. The only portion of any of these lots that's buildable is the front portion. So what you have is houses built on easements that you can't build on, at least in the parking lot. Houses that the owners cannot build but they were told they could build on. And frankly, dangerous conditions, admittedly no injuries have taken place yet. This substantially reduced or diminished the value of these houses. Quite frankly, these houses are worth nowhere near what they were paid for because other than the bare fact you can live in them, they're useless for what the intended purpose was, which was garages, sheds, back decks. In fact, at least one of the plaintiffs in this case had to move their air conditioner from one side of the house to another because it, too, was on the easement. The circuit court dismissed all of these cases under the so-called Norman Act, i.e. the economic law stuff. The Hunters Point homes defendants and their affiliates admittedly filed a motion to dismiss one of the things on that basis. In five of the cases, although not in all six, there are additional defendants, that being the real estate agents that were involved in this transaction. The real estate agents themselves actually never filed a motion to dismiss that's up on appeal here today. Instead, they filed an answer. They never requested that the trial court dismiss the complaints that's up before this court today. The trial court sua sponte, I suppose, dismissed all of the counts against the real estate agents at the same time that it dismissed all of the counts against the Hetler defendants or the Hunters Point homes defendants. So the question now before this court is really twofold. One, did the court procedurally err in dismissing the real estate agent defendants in those five cases? And two, whether or not the court procedurally erred in dismissing the real estate agents in those five cases, has plaintiffs stated a cause of action where does the Norman Doctrine bar all of these cases, period, in the sentence? The first argument that the defendants made on trying to have this case dismissed is that this representation of fully buildable lots was contained in the public record and somebody could have gone and looked it up if they wanted to. That's true. The easement is a public record. Somebody could have gone to the reporter for the easement office and looked it up if they'd known to do so. However, Hunters Point homes and the other defendants represented to the plaintiffs that these lots were fully buildable and what they could build on these lots. It is not necessary under the law to go when you're purchasing property or an item from somebody and they make an express, unequivocal representation to you to then go look it up to see if that's true. That's not the law. Certainly they have that option, but the plaintiffs in all of these cases were entitled to rely upon the representations of the defendants in this case, to which the next corollary to that argument is, well, that's a representation of law that's not actionable. The defendant will cite various cases that they contend supports that proposition. However, the cases cited by the defendant that I anticipate will be cited by the defendant deal with zoning laws. We're not making a claim based on any improper zoning. In fact, it's my understanding that the zoning laws in this area permit everything to be constructed that the plaintiffs were told they could construct and that they wanted to construct. Totally legal. They just weren't able to purchase the property rights to do so because 100th Point Homes didn't own the property rights to do so because of this easement for this power line. So that's a distinguishment of the, so thus it's a representation of fact, not argument. As a factual matter, they couldn't build it there because 100th Point Homes didn't own it to sell it. As far as the Borman doctrine itself goes, that only applies as a general proposition to torts. Expressly, it does not apply to contractual circumstances. While there is some negligent tort language in some of the complaints, we have not appealed those counts. We're only appealing fraud counts in this case. So we concede that the counts that we didn't appeal, and we make reference to that in our brief, that we're not appealing that. So that's fine. The court was right on those counts in those cases. But on the counts we did appeal, they are not governed by the Borman doctrine. The Borman doctrine doesn't bar them. A seller cannot make a fraudulent statement, false statement, to a buyer and then claim there's nothing you can do about it. You should have known that I was cheating, which is in essence what their argument is. Unless this court has any questions. I don't believe we do. Thank you, Your Honor. Thank you, Counsel. Counsel? Good morning. Good morning. May it please the Court, my name is Doug Brink. I represent the Applebee's, in this case, Hunters Point Homes, TLC Construction, O'Fallon, James Heller, and Jason Coleman. Also, there's another defendant listed in the case. This is Jay Coleman Enterprises, Inc. And I don't represent them. In fact, there's no record with the Illinois Secretary of State of that company being in existence. So there's never been an answer filed on behalf of that defendant. I will also, by what may it please the Court and Counsel, I'll also be presenting the argument on behalf of the realtors and the brokers. Unless the counsel for them throws something at me and says, hey, you missed something, I want to get up there too. But I will try to address all of the questions that the Court may have in that respect as well. As long as the two of you have worked that out, that's fine with us. Yes. Okay. First off, Your Honor, there were five cases, not the six cases. So there were four cases that the brokers were involved in and then five overall. But let me start with the grounds on the basis of dismissal in this case. The basis of dismissal in the order on the final complaint was, in fact, the Mormon nudge. As this Court stated in 2008 in Falls Craft, the reviewing court, as a reviewing court, you can sustain the judgment of the trial court on any grounds that are in the record, whether or not the trial court cited those grounds or whether the trial court's reasoning was even sound. And I think that what you'll find is in these five cases, each of these cases had no less than three complaints that were filed in this case. Some of the cases had four complaints that were filed in this case. Each time the complaints were filed, they were virtually identical. Sometimes there was some additional language that was changed. Every once in a while there was a new count that was added. Later on in the case, there was promissory estoppel that was thrown in. But each time it was dismissed over and over. We filed a motion to dismiss on the same grounds. The Court over and over sustained or granted our motion to dismiss. The ranges of the cause of action were numerous. There was misrepresentation. There were violations of the Consumer Fraud Act. There were negligence counts. There was rescission. And as I mentioned, there was promissory estoppel. But when the final complaints were dismissed, the Court gave the plaintiff the option to either file an amended complaint or it could stand on its own on the basis of its final complaint. And on behalf of the realtor, I would argue that the trial court did have the authority to dismiss those counts even though there were answers that were entered. And had it not had that authority, the plaintiff still had the option to bring amended complaints. It didn't have to take up the appeal. So by taking up the appeal, it was in essence adhering to the Court's own actions of dismissing the realtor complaints. Let me ask you this. Sure. He's indicated he's only appealing the dismissal of the fraud count. Can the Mormon doctrine be the basis of a dismissal of a fraud count? In this case, I believe it can, Your Honor. First of all, the Mormon doctrine in and of itself, it requires – it says you can't bring an action to court based on solely economic losses. There are two exceptions to that. One is an intentional misrepresentation of fact. And the other one is if you're in the business of providing information. Well, if it's the intentional – I guess that's what – Correct. That means fraud. And there were about three or four, and they vary a little bit between the cases. But there were a few representations that were alleged. I will point out to Your Honors that the allegation of a house being on the lot I don't believe was in the complaint. There were no allegations of an air conditioner being moved in the complaint. And so facts that were not in the record are now being argued. So I will argue the facts that were presented in the complaint. The facts that were in there dealt with not being able to build a deck, not being able to build a fence. And that was the general theme amongst those, having a completely buildable lot, which no one in this room has a completely buildable lot, and then also some construction defects. As it relates to the representation about the deck and the lot lines and the easements, those I don't think the Mormon doctrine so much apply because the exception in the Mormon doctrine has to be a representation of fact. And as you'll see that the Mormon doctrine is intertwined with Hammy and City of Aurora. Hammy and City of Aurora mainly take those allegations. So the Mormon doctrine I don't think applies so much to those allegations. As it relates to the next one, which is the construction defect, that allegation is parallel with the case with the facts in Mormon. In fact, in Mormon what happened was the seller made representations about a grain storage tank that turned out not to be true. They dealt with a deficiency or a defect, a qualitative defect in the item being sold. And that is exactly the allegation that we have when we're talking about construction defects in this case. And so for them to say, well, the Mormon doctrine doesn't apply to that one applies in the face of the Mormon doctrine. But a long-winded argument, I guess, to your question, Your Honor, that the Mormon doctrine does have an exception for intentional misrepresentation. I don't think that exception applies in this case. Just a couple of other items on the Mormon doctrine. I think I've expressed our argument in that one. But the – I do want to just for the court say that there were no – just so that we do show the Mormon doctrine does apply on those. There were no allegations of property damage and there were no allegations of personal injury. There was only mortgage interest, make and diminution of value, those types of things, not being able to build in your backyard. So I think we are dealing here with solely economic damages in the Mormon doctrine. As I mentioned, there are a couple of narrow exceptions that apply. The plaintiff did argue that the realtor would be subject to the provision of information exception. That, in fact, is not the case here. And the reason that it's not the case is because there were no allegations that they provided information to the plaintiffs. The basis for bringing in the realtor and the brokers in this case was only through agency. And so through agency, they're responsible – they can sue on the same basis as the principal. And so the only reason they brought them in was for agency and not for provision of information. There were a couple of cases that were cited in the plaintiff's brief that did hold brokers responsible or a realtor responsible. And that was when the realtor made an express representation during an inspection, such as a – there was a basement leak or a water leak. And the realtor said, no, those are fixed. In that case, the court held that there was a provision of information. In this case, that has not been alleged. No separate allegations have been made. As it relates to the Aurora and the Hamming case, the big thing that this case is going to rely on, I believe, Your Honors, is whether the representations – and frankly, I'm not going to argue whether the representations were even made. We haven't gotten to that point. But if you take the plaintiff's complaint as true, the representations that are alleged in there are only misrepresentations of the law, not of fact. The Aurora case stated that representations based upon public records – not just zoning. The facts in that case happen to be zoning, but they said representations based on public record is not a representation of fact but is law. And both parties are presumed to be equally capable of knowing and interpreting the law. The court also said that a lack of material fact, meaning only representation of law, is fatal not only to the common law fraud count but to the consumer fraud count. And so if this court finds that the trial court did, that these were representations of law, then it's fatal to both – to all fraud counts. So you have to dismiss all fraud counts. In that case, the seller was selling a five-residential unit building. They represented that the building could be used for five residential units. In fact, it couldn't. And the court found that even if the representations were made in that case, that they were representations of law and not fact. And so they weren't actionable. In the Hamming case, the Hamming case had some additional language. It said that you must establish reliance and that you have a right to rely upon it. And if you're given a misrepresentation of law, you don't have the right to rely upon that. The court said that a person may not enter into a transaction closing his eyes to available information and then charge that he has been deceived by the words or conduct of the other party. In this case – in the Aurora and the Hamming case, the defendants – the court said, look, you had the opportunity to go and look and see what was in the public record. In this case, not only did the plaintiffs have the opportunity to go and look, but in the record you'll find, Your Honors, that they were provided a copy of the plaque prior to an act closing that outlined the easement that was on the property. Not only that, they had actual knowledge. They knew about the easement being on the property. So the plaintiffs will argue, well, yeah, they had the opportunity to go, but they didn't. They can't be expected to do that because they were told something else. They had the information in their hands at the time and chose not to go off that public record information. And so if there were misrepresentations made, they had to have been misrepresentations of law and not fact. So on those basis alone, the count should be dismissed. The final thing that I'll argue, Your Honor, is as it relates to the representations that were listed in the complaint. The courts have held over and over, specifically the Kahn versus Suzuki case, that a necessary element of fraud is you have to have a misrepresentation of a material fact. And the case has stated that in order to state the fact, you have to state not only what was said, but you have to state who made the statement and when the statement was made. In this case, the allegation here quoted from the plaintiff's complaint is Hunters Point Homes, through its agents and employees, including James D. Heller, made various representations to plaintiffs intending for plaintiffs to actually rely on representations before entering into a contract with a plaintiff. We don't have here through three or four complaints, whichever case we're talking about, there's never stated who made what complaints. So there's no statements attributable to any party, and there's also no allegation about when the item was made. Did Mr. Heller make all of the allegations in there? If so, why is it saying including James D. Heller? If he made some of the representations and other agents made some representations, why is it that we aren't shown who made the other representations? If these representations were actually made, why don't we know when they were made? Were they made three days before the contract was entered into? Were they made three months before the contract? Were they made three years before the contract? We don't have any of that information, and through three or four complaints, the plaintiff never thought it sufficient to add those in. I will argue – I will make note, Your Honor, that the data itself is important because we may have a statute of limitations problem. We haven't brought our case pursuant to a 2-619 motion, saying that it violates the statute of limitations. I think we have enough grounds on a 615 motion. But we do bring it to the court's attention that that is why it's required to have when the representation was made. So I think, Your Honor, I think the court understands our argument. We would again ask that this court uphold the dismissal that the trial court made. If you have any questions, I'll – I don't, please, sir. Thank you. Thank you very much for your time. Counsel? Very briefly, most of the argument I just heard deals with the facts of the case. We're not in a factual state. Stifling a tender discovery, Hunter's Point Holmes, frankly, has not answered a single discovery request. But that doesn't matter because we're here on a plea motion, not a summary judgment motion or anything like that. You take the allegations as true. That's where we are here today. Taking the allegations as true, the question this court needs to decide is whether or not the Mormon Doctrine Mars declines. Simply yes or no question. If the answer is yes, Your Honor should affirm the case. If the answer is no, Your Honor must reverse the case. To the extent there are any other pleading difficulties, we know that the trial court would have allowed leave to amend. So the fact that this court could affirm on any basis in the record, we know that the trial court would have granted leave to correct any other deficiencies. Obviously, if the Mormon Doctrine Mars declines, adding a little allegation here, tweaking a little allegation there isn't going to change that fact. But it's the plaintiff's position the Mormon Doctrine doesn't Mars declines. As to the houses being built on this easement itself, two of the cases expressly claim that the houses are built in part on this non-buildable easement. The rest of them, admittedly, are apparently not built on the easement. Finally, as to the extent that, yes, there was a plaque map provided to the plaintiffs that showed this easement, I won't dispute the fact that there was a plaque map that showed a little dotted line showing an easement. Yeah, that's factually true. But while that was being shown to the plaintiffs in each of these cases, the defendants were telling the plaintiffs that they could build across that little dotted line. The plaintiffs are not obliged to go do an extensive title inquiry to determine whether or not the guy that sold them their property is lying to them. Many pieces of property include easements. Many pieces of property include right-of-ways. Many of those easements do not affect buildability on a piece of property at all. For instance, an easement for a water line would not affect in the slightest the ability to put a fence on a piece of property. Unless the court has any questions. I don't believe we do. Thank you, counsel. We appreciate the briefs and the arguments of all counsel. We'll take the case under advisement.